# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**733**

**CAF 11-00442**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND SCONIERS, JJ.

---

IN THE MATTER OF NOAH V.P.
------------------------------------------------
ONEIDA COUNTY DEPARTMENT OF SOCIAL SERVICES,     MEMORANDUM AND ORDER
PETITIONER-RESPONDENT;

GINO P., SR., RESPONDENT-APPELLANT.

---

JOHN J. RASPANTE, UTICA, FOR RESPONDENT-APPELLANT.

JOHN A. HERBOWY, COUNTY ATTORNEY, UTICA (DENISE J. MORGAN OF COUNSEL), FOR PETITIONER-RESPONDENT.

PETER J. DIGIORGIO, JR., ATTORNEY FOR THE CHILD, UTICA, FOR NOAH V.P.

---

Appeal from an order of the Family Court, Oneida County (James R. Griffith, J.), entered January 5, 2011 in a proceeding pursuant to Social Services Law § 384-b.  The order, among other things, transferred custody and guardianship of the subject child to petitioner.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum:  On appeal from an order of disposition that, inter alia, terminated his parental rights, respondent father contends that petitioner failed to establish by clear and convincing evidence that it made diligent efforts to unite the father and his child who is the subject of this proceeding before seeking to terminate his parental rights (*see* Social Services Law § 384-b [7] [a]).  We reject that contention because we conclude that petitioner made the requisite "diligent efforts," i.e., "reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child" (§ 384-b [7] [f]).

Here, the father has three other children with the mother of the subject child, and he took custody of the other children in March or April 2008.  In July 2008, the subject child was removed from the mother's home and placed in foster care.  The child was adjudicated a neglected child with respect to the mother in September 2008, and the mother's parental rights were terminated in May 2010.  When the child was placed in foster care, petitioner asked the father to take custody of him but he declined and, indeed, he did not believe that he was the father of the child.  The caseworker for petitioner encouraged the father to file a paternity petition, but the father waited until

February 2009 to do so and was not adjudicated the father until July 2009. The caseworker met with the father twice a month from the time the child entered foster care and kept him updated on the child. The caseworker invited the father to all the service plan reviews regarding the child, but he attended only one of them. Even after the paternity adjudication, the father expressed no desire to have custody of the child and instead was in favor of an adoption plan for the child.

"[W]hen it is clear that the birth parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child" (Social Services Law § 384-b [1] [a] [iv]). In addition, "[a]n agency which has tried diligently to reunite a [parent] with [his or] her child but which is confronted by an uncooperative or indifferent parent is deemed to have fulfilled its duty" (*Matter of Star Leslie W.*, 63 NY2d 136, 144). We conclude that petitioner established the requisite diligent efforts by demonstrating that it made reasonable attempts to develop and encourage a relationship between the father and the child.

We reject the father's further contention that petitioner failed to establish by clear and convincing evidence that he permanently neglected the child. Permanent neglect "may be found only after it is established that the parent has failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so" (*id.* at 142, citing Social Services Law § 384-b [7] [a]). The term " 'to plan for the future of the child' " means "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent" (§ 384-b [7] [c]; *see Matter of Orlando F.*, 40 NY2d 103, 110). Here, the father sought custody of the child only when petitioner filed its petition seeking to terminate his parental rights, after he refused to sign a judicial surrender to allow the adoption to proceed. Contrary to the father's contention, the evidence at the fact-finding hearing establishes that he was financially able to take custody of the child since the time he was placed in foster care. The father obtained public assistance for the child's siblings, and could have done the same for the subject child. Moreover, the father had an additional child with his girlfriend in May 2009 and was able to care for him financially. We conclude that petitioner thus established that the father failed to plan to have the child reside with him, although the father was physically and financially able to do so, and therefore permanently neglected him.

Finally, we reject the father's contention that the court abused its discretion in refusing to issue a suspended judgment. The court at the dispositional hearing is concerned only with the best interests of the child (*see* Family Ct Act § 631; *Star Leslie W.*, 63 NY2d at 147). At the time of the dispositional hearing, the child had been living in a kinship foster home in Florida for six months, had bonded with the foster mother, and was doing very well. As the court noted,

the foster mother's actions in coming to New York once or twice a month for the first half of the year so that the child could bond with her showed her commitment to the child, whom she planned to adopt.  In contrast, the father has had minimal contact with the child since his birth and has little to no bonding with the child (*see Matter of Emmeran M.*, 66 AD3d 1490).  We thus conclude that the court properly terminated the father's parental rights and freed the child for adoption.

Entered:  June 8, 2012                          Frances E. Cafarell
                                                Clerk of the Court